FILED

**LEVI & KORSINSKY, LLP**
David E. Bower, Esq.   SBN 119546
600 Corporate Pointe, Suite 1170
Culver City, CA  90230-7600
Phone: 310-839-0442
Fax: 310-558-3005

2011 FEB 25  PM 2: 42

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

**LEVI & KORSINSKY, LLP**
Joseph Levi, Esq.
30 Broad Street, 15th Floor
New York, New York 10004
Phone:  212-363-7500
Fax: 212-363-7171

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASTOR BK REALTY TRUST, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>BECKMAN COULTER, INC., GLENN SCHAFER, BETTY WOODS, CHARLES HAGGERTY, WILLIAM KELLEY, PETER DERVAN, VAN HONEYCUTT, KEVIN FARR, ROBERT FUNARI, SUSAN SALKA, RICHARD WALLACE, LEWIS WILLIAMS, DANAHER CORPORATION,  and DJANET ACQUISITION CORP.,<br><br>                                    Defendants. | Case No.:        CV11-01695 GAF (SSx)<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS, AND FOR VIOLATION OF STATE LAW BREACHES OF FIDUCIARY DUTY**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by its attorneys, alleges upon information and belief, except for its own acts, which are alleged on knowledge, as follows:

1.       Plaintiff brings this class action on behalf of the public stockholders of Beckman Coulter, Inc. ("Beckman Coulter" or the "Company") against Beckman Coulter's Board of Directors (the "Board" or the "Individual Defendants"), seeking equitable relief for their violations

- 1 -

of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act") and for their breaches of fiduciary duties arising out of their attempt to sell the Company to Danaher Corporation ("Danaher") (the "Proposed Transaction") by means of an unfair process and for an unfair price.

2.      Beckman Coulter develops, manufactures and markets products that simplify, automate and innovate complex biomedical tests. More than 200,000 Beckman Coulter systems operate in laboratories around the world, supplying critical information for improving patient health and reducing the cost of care.

3.      On February 7, 2011, Danaher and the Company announced a definitive agreement under which Danaher, through its wholly owned subsidiary, Djanet Acquisition Corp. ("Merger Sub"), will commence a tender offer to acquire all of the outstanding shares of Beckman Coulter for $83.50 per share in cash. The Proposed Transaction is valued at $6.8 billion, including debt assumed and net of cash acquired. Danaher commenced the tender offer on February 15, 2011, and it is scheduled to expire on March 23, 2011.

4.      The Board has breached their fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration. As described in more detail below, given the Company's recent strong performance, the financial analyses conducted by the Company's financial advisor, analyst expectations, and the synergies to be realized by Danaher's shareholders from the Proposed Transaction, the Proposed Transaction consideration is inadequate and significantly undervalues the Company.

5.      Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company.  Specifically, pursuant to the merger agreement dated February 6, 2011 (the "Merger Agreement"), defendants agreed to:  (i) a strict no-solicitation

- 2 -

provision that prevents the Company from soliciting other potential acquirors or even in continuing discussions and negotiations with potential acquirors; (ii) a provision that provides Danaher with three business days to match any competing proposal in the event one is made; and (iii) a provision that requires the Company to pay Danaher a termination fee of $165 million in order to enter into a transaction with a superior bidder.  These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of Beckman Coulter.

6.    On February 15, 2011, the Company filed a Schedule 14D-9 Recommendation Statement (the "Recommendation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.   The Recommendation Statement fails to provide the Company's shareholders with material information and provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision regarding whether to tender their shares in the Proposed Transaction.

7.    The Individual Defendants have breached their fiduciary duties of loyalty, due care, candor, independence, good faith and fair dealing, and Beckman Coulter and Danaher have aided and abetted such breaches by Beckman Coulter's officers and directors.  Plaintiff seeks to enjoin the Proposed Transaction unless and/or until defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Sections 14(d)(4) and 14(e) of the Exchange Act. This court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

9.    Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District.  In addition, Beckman Coulter maintains its principal executive offices in Orange County, California.

**PARTIES**

10.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Beckman Coulter.

11.     Beckman Coulter is a corporation organized and existing under the laws of the State of Delaware.  It maintains its principal corporate offices at 250 S. Kraemer Blvd, Brea, CA 92821.

12.     Defendant Glenn Schafer ("Schafer") has been the Chairman of the Board of the Company since 2010.

13.     Defendant Charles Haggerty ("Haggerty") has been a director of the Company since 1996.

14.     Defendant Betty Woods ("Woods") has been a director of the Company since 2008.

15.     Defendant William Kelley ("Kelley") has been a director of the Company since 1994.

16.     Defendant Peter Dervan ("Dervan") has been a director of the Company since 1997.

17.     Defendant Van Honeycutt ("Honeycutt") has been a director of the Company since 1998.

18.     Defendant Kevin Farr ("Farr") has been a director of the Company since 2004.

19.     Defendant Robert Funari ("Funari") has been a director of the Company since 2005.

20.     Defendant Susan Salka ("Salka") has been a director of the Company since 2007.

21.     Defendant Richard Wallace ("Walalce") has been a director of the Company since 2009.

22.     Defendant Lewis Williams ("Williams") has been a director of the Company since 2009.

23.     Defendants referenced in ¶¶ 12 through 22 are collectively referred to as Individual Defendants and/or the Board.

- 4 -

24.     Defendant Danaher is a Delaware corporation with its headquarters located in Washington, D.C. and is a diversified technology leader that designs, manufactures, and markets innovative products and services to professional, medical, industrial, and commercial customers.

25.     Defendant Djanet Acquisition Corp. is a Danaher corporation wholly owned by Danaher that was created for the purposes of effectuating the Proposed Transaction.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

26.     By reason of Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of Beckman Coulter and owe them, as well as the Company, a duty of care, loyalty, good faith, candor, and independence.

27.     Under Delaware law, where the directors of a publicly traded corporation undertake a transaction that will result in either a change in corporate control or a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(d)     will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public shareholders.

28.   In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a)   participating in any transaction where the Individual Defendants' loyalties are divided;

(b)   participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)   unjustly enriching themselves at the expense or to the detriment of the public shareholders.

29.   Defendants also owe the Company's stockholders a duty of candor, which includes the disclosure of all material facts concerning the Proposed Transaction and, particularly, the fairness of the price offered for the stockholders' equity interest.   Defendants are knowingly or recklessly breaching their fiduciary duties of candor by failing to disclose all material information concerning the Proposed Transaction, and/or aiding and abetting other Defendants' breaches.

30.   Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, good faith, candor, and independence owed to plaintiff and other public shareholders of Beckman Coulter.

**I.**   CLASS ACTION ALLEGATIONS

31.   Plaintiff brings this action on its own behalf and as a class action on behalf of all owners of Beckman Coulter common stock and their successors in interest, except Defendants and their affiliates (the "Class").

32.   This action is properly maintainable as a class action for the following reasons:

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

(a)   the Class is so numerous that joinder of all members is impracticable.  As of February 18, 2011, Beckman Coulter has approximately 69.25 million shares outstanding.

(b)   questions of law and fact are common to the Class, including, inter alia, the following:

(i)   Have the Individual Defendants misrepresented and omitted material facts in violation of Section 14(d)(4) and 14(e) of the Exchange Act;

(ii)   Have the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iii)   Have the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to Plaintiff and the other members of the Class;

(iv)   Have the defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Transaction;

(v)   Have the defendants breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty and fair dealing;

(vi)   Have the defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

   (vii) Whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

   (viii) Have Beckman Coulter, Danaher, and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

   (ix) Is the Class entitled to injunctive relief or damages as a result of defendants' wrongful conduct.

  (c) Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

  (d) Plaintiff's claims are typical of those of the other members of the Class.

  (e) Plaintiff has no interests that are adverse to the Class.

  (f) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

  (g) Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

  (h) Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy

**II.** FURTHER SUBSTANTIVE ALLEGATIONS

  33. Beckman Coulter develops, manufactures and markets products that simplify, automate and innovate complex biomedical tests. More than 200,000 Beckman Coulter systems

- 8 -

operate in laboratories around the world, supplying critical information for improving patient health and reducing the cost of care.

34.     The Company has been performing well recently. On August 3, 2009, the Company completed the acquisition of the laboratory-based diagnostics systems business of Olympus Corporation ("Olympus") for approximately $800 million based. Since then, the Company has seen significant growth.

35.     On October 27, 2010, the Company announced its financial results for the third quarter of 2010. The Company reported total third quarter revenue of $893.8 million, including $112.2 million from the Olympic acquisition, an increase of 8.6% over the same quarter in 2009. The Company reported adjusted net earnings of $70.5 million, or $1.00 per diluted share, an increase of 12.4% from the same quarter in 2009.  "Third quarter highlights included another strong contribution from the Olympus business as we recorded the one-year anniversary of the acquisition; continued strength in Asia Pacific; 11.1% growth in International recurring revenue, or 13.8% in constant currency; and 24.6% growth in trailing-twelve-month adjusted EBITDA," said Bob Hurley, Beckman Coulter's interim President and Chief Executive Officer.

36.     For the first nine months of 2010, revenue increased 17.9% over the prior year period due to Olympus and robust growth in Asia Pacific. On an adjusted basis, operating income for the first nine months of 2010 was $327.3 million, a 20.9% increase over the same period in 2009.

*The Proposed Transaction*

37.     In a press release dated February 7, 2011, the Company announced that it had entered into a merger agreement with Danaher pursuant to which Danaher, through Merger Sub, would commence a tender offer to acquire all of the outstanding shares of the Company for $83.50

- 9 -

per share.  Danaher commenced the tender off on February 15, 2011 and it is scheduled to expire on March 23, 2011.

38.     Following consummation of the Proposed Transaction, Beckman Coulter will become part of Danaher's Life Sciences & Diagnostics segment, joining Danaher's Leica, AB Sciex, Radiometer and Molecular Devices businesses.

39.     Danaher's President and CEO, H. Lawrence Culp, Jr., was excited about picking up Beckman Coulter, stating: "Beckman Coulter is an iconic company with a great brand, broad reach and technology leadership; well positioned in the markets it serves. Beckman provides an excellent complement to our existing Life Sciences & Diagnostics businesses. Being part of Danaher, Beckman associates will have the opportunity to leverage the power of the Danaher Business System, including the processes by which Danaher accelerates growth through new product innovation and driving sales, marketing and service, as well as its strength in continuously expanding margins."

40.     The Proposed Transaction consideration is inadequate and significantly undervalues the Company. For example, the *Illustrative Discounted Cash Flow Analysis* conducted by Goldman Sachs & Co. ("Goldman Sachs") yielded a value for the Company as high as $115.80 per share.

41.     In addition, the Proposed Transaction represents a paltry premium of just 11.1% based on the $75.17 closing price of Beckman Coulter stock on February 4, 2011, the last trading day prior to the announcement of the Proposed Transaction.   The Proposed Transaction consideration represents a premium of 6.7% based on the high intraday market price of $78.27 per share during the 52-week period ending February 4, 2011.

42.     Further, at least one Wall Street analyst had a price target of $84.00 per share before the Proposed Transaction was announced.

- 10 -

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

43.     In addition, the Proposed Transaction consideration fails to adequately compensate Beckman Coulter's shareholder for the significant synergies created by the merger. The Proposed Transaction is a strategic merger for Danaher. As stated by Danaher's Chief Executive Officer Lawrence Culp in a conference call discussing the Proposed Transaction:

> We've identified over $250 million of cost synergies we believe we can realize over the next few years at Beckman, including significant sourcing and procurement synergies. We also believe there is an opportunity to create value by
> sharing expertise in processes and using the scale of our existing life sciences and diagnostics businesses. Overall, we believe this will be a high-fit, high impact opportunity with DBS.
>
> One area where we believe there is significant opportunity to drive top line synergies is in China. Currently Beckman Coulter is number two in the IVD business in China, with $300 million in revenue, growing in excess of 25% annually.
>
> We're excited about the potential opportunity to realize additional market share gains in that region by taking advantage of our existing footprint with Leica and Radiometer and the relationships we have with hospitals and labs. In addition, Beckman's strong automation capabilities, incumbent positions in thousands of hospitals and regulatory expertise will aid AB SCIEX's growing diagnostic position in mass spectrometry.
>
> The third and final reason we're excited about acquiring Beckman Coulter is that we believe it offers a uniquely compelling value creation opportunity. We will be acquiring Beckman for about 1.8 times 2010 revenue. More importantly, because of our confidence in the quality of this business and the DBS opportunities therein, we expect a 10% return on invested capital in less than four years. Additionally, within that same timeframe, we expect Beckman to contribute more than $650 million to Danaher's annual free cash flow.
>
> Excluding the impact of acquisition-related non-recurring charges such as in-process R&D, inventory write-ups and deferred revenue accounting, we expect the transaction to be accretive to EPS on an adjusted basis by about $0.05 to
> $0.10 in 2011. In addition, we believe Beckman will contribute $0.25 to $0.30 to our 2012 GAAP EPS.

Despite the significant synergies inherent in the transaction for Danaher, however, the Board failed to secure a fair price for the Company, either for the intrinsic value of its assets or the value of the Company's assets to Danaher.

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

44.     Given the Company's recent strong performance, the financial analyses conducted by Goldman Sachs, analyst expectations, and the synergies to be realized by Danaher's shareholders from the Proposed Transaction, the Proposed Transaction consideration is inadequate and significantly undervalues the Company.

***The Preclusive Deal Protection Devices***

45.     In addition, as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

46.     By way of example, §5.2(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Danaher. §5.2(b) demands that the Company terminate any and all prior or on-going discussions with other potential acquirors.

47.     In addition, pursuant to §5.2 of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify Danaher of the bidder's identity and the terms of the bidder's offer. Thereafter, should the Board determine that the unsolicited offer is superior, before the Company can terminate the Merger Agreement with Danaher in order to enter into the competing proposal, it must grant Danaher three business days in which the Company must negotiate in good faith with Danaher (if Danaher so desires) and allow Danaher to amend the terms of the Merger Agreement to make a counter-offer so that the competing bid ceases to qualify as a superior proposal. In other words, the Merger Agreement gives Danaher access to any rival bidder's information and allows Danaher a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Danaher and piggy-back upon the due diligence of the foreclosed second bidder.

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

48.     In addition, the Merger Agreement provides that a termination fee of $165 million must be paid to Danaher by Beckman Coulter if the Company decides to pursue the competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

49.     Danaher is also the beneficiary of a "Top-Up" provision that ensures that Danaher gains the shares necessary to effectuate a short-form merger.  Pursuant to the Merger Agreement, if Danaher receives 90% of the shares outstanding through its tender offer, it can effect a short-form merger.  In the event Danaher fails to acquire the 90% required, the Merger Agreement also contains a "Top-Up" provision that grants Danaher an option to purchase additional shares from the Company in order to reach the 90% threshold required to effectuate a short-form merger.

50.     Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

***Beckman Coulter's Executives Officers and Directors Stand to Receive Unique Material Financial Benefits in the Proposed Transaction Not Available to Beckman Coulter's Public Shareholders***

51.     The Company's executive officers and directors have material conflicts of interest and are acting to better their own personal interests through the Proposed Transaction at the expense of Beckman Coulter's public shareholders.

52.     For example, pursuant to the Merger Agreement, all unvested stock options and phantom stock unit appreciation rights ("SARs") to purchase shares of the Company's common stock granted under any of the Company's stock option plans will immediately vest in full upon the

- 13 -

completion of the Proposed Transaction.   The chart below shows the amount of unvested stock options and SARs held by the Company's executive officers and directors that they will be able to cash out as a result of the Proposed Transaction:

| Name | Number of Shares | Weighted Average Exercise Price Per Share |
|---|---|---|
| Glenn S. Schafer | 7,010 | $  73.58 |
| Peter B. Dervan, Ph.D. | 3,160 | 76.04 |
| Kevin M. Farr | 3,160 | 76.04 |
| Robert G. Funari | 3,160 | 76.04 |
| Charles A. Haggerty | 3,160 | 76.04 |
| Van B. Honeycutt | 3,160 | 76.04 |
| William N. Kelley, M.D. | 3,160 | 76.04 |
| Susan R. Salka | 3,160 | 76.04 |
| Richard P. Wallace | 3,160 | 76.04 |
| Lewis T. Williams, M.D., Ph.D. | 3,160 | 76.04 |
| J. Robert Hurley | 77,750 | 71.13 |
| Charles P. Slacik | 44,260 | 66.11 |
| Robert W. Kleinert | 39,303 | 65.39 |
| Scott Atkin | 38,743 | 64.21 |
| Arnold Pinkston | 30,703 | 65.58 |
| Total | 266,209 | |

The column header above the number of shares reads "Unvested Options and SARs to be Accelerated and Converted to the Option Payment".

53.     In addition, certain of the Company's executive officers and directors hold restricted stock ("RSUs"), performance shares, and phantom stock units of the Company, all of which will automatically vest upon consummation of the Proposed Transaction, and entitle the holder to receive the Proposed Transaction consideration of $83.50 per share. The following chart shows the amount and value of RSU's, performance shares, and phantom stock units that the Company's executive officers and directors will be able to cash out as a result of the Proposed Transaction:

- 14 -

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

| Name | Number of RSUs, Performance Shares and Phantom Stock Units to be Accelerated and Converted to the Offer Price | Aggregate of the Offer Price to be paid regarding RSUs, Performance Shares and Phantom Stock Units |
|---|---|---|
| Glenn S. Schafer | 8,316 | $ 694,386 |
| Peter B. Dervan, Ph.D. | 6,928 | 578,488 |
| Kevin M. Farr | 6,488 | 541,748 |
| Robert G. Funari | 4,733 | 395,206 |
| Charles A. Haggerty | 6,912 | 577,152 |
| Van B. Honeycutt | 6,657 | 555,860 |
| William N. Kelley, M.D. | 6,730 | 561,955 |
| Susan R. Salka | 3,211 | 268,119 |
| Richard P. Wallace | 1,748 | 145,958 |
| Lewis T. Williams, M.D., Ph.D. | 1,766 | 147,761 |
| Betty Woods | 9,588 | 800,598 |
| Scott Garrett | 80,168 | 6,694,028 |
| J. Robert Hurley | 38,000 | 3,173,000 |
| Charles P. Slacik | 21,680 | 1,810,280 |
| Robert W. Kleinert | 19,508 | 1,628,918 |
| Scott Atkin | 19,690 | 1,644,115 |
| Arnold Pinkston | 15,218 | 1,270,703 |
| Total | 257,341 | $ 21,488,275 |

54.     Further, each of the Company's executive officers has a change of control agreement with the Company which entitles them to certain severance and other benefits in the event of their termination under certain circumstances within two years following a change of control. The following chart shows the potential payments to each such officer in the event of such termination:

| Executive Officer / Director | Estimated Value of Cash Severance Payments | Estimated Value of Benefit Plan Continuation | Estimated Tax Gross-Up Payment | Option Payments from Unvested Options and SARs | Offer Price for RSUs, Performance Shares and Phantom Stock Units | Total |
|---|---|---|---|---|---|---|
| J. Robert Hurley | 4,240,000 | 43,824 | 2,599,393 | 962,043 | 3,173,000 | 11,018,260 |
| Charles P. Slacik | 2,199,540 | 53,915 | 1,365,037 | 769,565 | 1,810,280 | 6,198,337 |
| Robert W. Kleinert | 1,886,220 | 51,858 | 1,082,974 | 711,966 | 1,628,918 | 5,361,936 |

- 15 -

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

| | | | | | | |
|---|---|---|---|---|---|---|
| Scott Atkin | 1,722,000 | 53,051 | 1,189,053 | 747,457 | 1,644,115 | 5,355,676 |
| Arnold Pinkston | 1,590,750 | 53,321 | 942,752 | 550,246 | 1,270,703 | 4,407,772 |

55.     Based on the above, the Proposed Transaction is unfair to Beckman Coulter's public shareholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Class members.

***The Materially Misleading and Incomplete Recommendation Statement***

56.     On February 15, 2011, the Company filed the Recommendation Statement with the SEC in connection with the Proposed Transaction.  The Recommendation Statement fails to provide the Company's shareholders with material information and provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision regarding whether to tender their shares in the Proposed Transaction.

57.     For example, the Recommendation Statement completely fails to disclose the underlying methodologies, key inputs and multiples relied upon and observed by Goldman Sachs, the Company's financial advisor, so that shareholders can properly assess the credibility of the various analyses performed by Goldman Sachs and relied upon by the Board in recommending the Proposed Transaction.

58.     With respect to the *Illustrative Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose (a) the free cash flow amounts for years 2011 through 2015 calculated by Goldman Sachs in the analysis, as well as the definition of "free cash flows" used in the analysis; (b) the reasons Goldman Sachs used a mid-year convention when discounting free cash flows; (c) the criteria used to select perpetuity growth rates of 1.0% to 3.0%; and (d) the key inputs used to calculate the Company's weighted average cost of capital, including betas, risk premiums, and assumed capital structure. Disclosure of this information is important considering

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

the wide per share value range calculated in the analysis – the analysis yielded a range of implied present values per share of $62.20 to $115.80.

59.     With respect to the *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose (a) the criteria used to select the companies that were deemed similar to the company and used in the analysis; (b) the multiples observed for each company in the analysis; and (c) the conclusions made by Goldman Sachs from this analysis.

60.     With respect to the *Selected Transactions Analysis,* the Recommendation Statement fails to disclose: (a) the criteria used to select the transactions used in the analysis; (b) the multiples observed for each transaction in the analysis; and (c) the conclusions made by Goldman Sachs from this analysis.

61.     With respect to the *Premia Paid Analysis,* the Recommendation Statement fails to disclose (a) the number of transactions used in the analysis; and (b) the low/high/mean premiums observed in the analysis.

62.     In addition, the Recommendation Statement fails to disclose material information concerning the Goldman Sachs' interest in the Proposed Transaction closing and in the parties involved. For example, the Recommendation Statement fails to disclose how much of Goldman Sachs' $32 million fee is contingent upon the Proposed Transaction closing.  In addition, the Recommendation Statement states that:

> Goldman Sachs has also provided certain investment banking services to Danaher and its affiliates from time to time for which its investment banking division has received customary compensation, and may receive compensation, including having acted as joint bookrunning manager with respect to a public offering by Danaher of its senior notes due 2019 (aggregate principal amount of $750 million) in February 2009; and as Danaher's financial advisor in connection with its divestiture of its Pacific Scientific Aerospace business announced in January 2011.

- 17 -

The Recommendation Statement must disclose how much compensation Goldman Sachs has received for such services, whether they are still owed money for such services, and whether the services performed with respect to the January 2011 divestiture is still ongoing.

63.    The Recommendation Statement fails to disclose material information concerning the sales process.  In particular, the Company should disclose:

(a)    the reasons the Company did not engage in discussions with Potential Purchaser #4, Potential Purchaser #2,  or Potential Purchaser #3 in the period of May 2010 to September 2010;

(b)    what other actions were considered by the Board in its teleconference of October 2, 2010 in response to Danaher's indication of interest;

(c)    details concerning the "remediation of product quality and regulatory compliance challenges" facing the Company, discussed at the Board meeting of October 21-22, 2010;

(d)    details concerning the Company or Goldman Sachs' role in the formation of Consortium A in December 2010; and

(e)    details concerning the Company or Goldman Sachs' role in the formation of Consortium B in December 2010.

64.    Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**
**Violations of Section 14(d)(4) and 14(e) of the Exchange Act**
**(against all defendants)**

65.    Plaintiff repeats all previous allegations as if set forth in full herein.

- 18 -

66.     Defendants have issued the Recommendation Statement with the intention of soliciting shareholder support of the Proposed Transaction.

67.     Sections 14(d)(4) and 14(e) of the Exchange Act require full and complete disclosure in connection with tender offers.  Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative

68.     The Recommendation Statement violates the Sections 14(d)(4) and 14(e) because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

69.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II
### Breach of Fiduciary Duties
### (Against All Individual Defendants)

70.     Plaintiff repeats all previous allegations as if set forth in full herein.

71.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of

Beckman Coulter and have acted to put their personal interests ahead of the interests of Beckman Coulter shareholders.

72.     The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes heightened fiduciary responsibilities to maximize Beckman Coulter's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

73.     The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the shareholders of Beckman Coulter because, among other reasons:

(a)     they failed to take steps to maximize the value of Beckman Coulter to its public shareholders and took steps to avoid competitive bidding;

(b)     they failed to properly value Beckman Coulter; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

74.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Beckman Coulter's assets and will be prevented from benefiting from a value-maximizing transaction.

75.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

76.     Plaintiff and the Class have no adequate remedy at law.

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

**COUNT III**
**Breach of Fiduciary Duty -- Disclosure**
**(Against Individual Defendants)**

77.     Plaintiff repeats all previous allegations as if set forth in full herein.

78.     The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the decisions confronting Beckman Coulter's shareholders.

79.      As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

80.     As a result, Plaintiff and the Class members are being harmed irreparably.

81.     Plaintiff and the Class have no adequate remedy at law.

**COUNT IV**

**Aiding and Abetting**
**(Against Beckman Coulter, Danaher, and Merger Sub)**

82.     Plaintiff repeats all previous allegations as if set forth in full herein.

83.     As alleged in more detail above, Defendants Beckman Coulter, Danaher, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

84.     As a result, Plaintiff and the Class members are being harmed.

85.     Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(a)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and its counsel as Class counsel;

(b)     declaring that the Recommendation Statement is materially misleading and contains omissions of material fact in violation of Section 14(d)(4) and 14(e) of the Exchange Act;

(c)     enjoining, preliminarily and permanently, the Proposed Transaction;

- 21 -

1        (d)     in the event that the transaction is consummated prior to the entry of this

2  Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

3        (e)     directing that Defendants account to Plaintiff and the other members of the

4  Class for all damages caused by them and account for all profits and any special benefits obtained

5  as a result of their breaches of their fiduciary duties;

6

7        (f)     awarding Plaintiff the costs of this action, including a reasonable allowance

8  for the fees and expenses of Plaintiff's attorneys and experts; and

9        (g)     granting Plaintiff and the other members of the Class such further relief as the

10  Court deems just and proper.

11

12  February 24, 2011            **LEVI & KORSINSKY, LLP**

13

14

15                              DAVID E. BOWER

16                         600 Corporate Pointe, Suite 1170
Culver City, CA  90230-7600

17

18                         **LEVI & KORSINSKY, LLP**
Joseph Levi (to be admitted *pro hac vice*)

19                         30 Broad Street, 15th Floor
New York, NY  10004

20                         Tel: 212-363-7500
Fax: 212-363-7171

21                         Attorneys for Plaintiffs

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY